# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

## ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

### MARCH TERM, 1909.

ARTHUR L. ANDREWS, complainant-appellant,

*v.*

THE GUAYAQUIL AND QUITO RAILWAY COMPANY et al., respondents-defendants.

[Argued July 8th, 1908. Decided March 2d, 1909.]

An association conveyed by trust deed certain securities empowering the trustees to sell or pledge them to raise money to enable the association to perform a railway construction contract. Thereafter another company undertook to complete the railway, and assumed all other obligations of the association, which conveyed to it all its property, including the securities, subject to the trust deed.—*Held*, that a pledge of the securities by the grantee company, to secure the payment of money loaned to it, but which was not intended to be, and was not used in the construction work, was a violation of the trust, and unenforceable against the trustees.

535

On appeal from a decree of the court of chancery advised by Vice-Chancellor Stevens, whose opinion is reported in *73 N. J. Eq. (3 Buch.) 150.*

*Messrs. McCarter & English,* with *Charles A. Collin* (of the New York bar), on the brief, for the appellant (the complainant below).

*Mr. Charles L. Corbin* and *Mr. DeWitt Van Buskirk,* for the respondents.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

This case is a sequel to that of the *Ecuadorian Association* v. *Ecuador Company,* reported in *70 N. J. Eq. (4 Robb.) 277,* and on appeal in *71 N. J. Eq. (1 Buch.) 757.* In that case it was determined that certain money, amounting to $65,750, advanced by one Robert C. Pruyn to the Ecuador Company, was a loan by him to that corporation, and not the payment of a subscription to its capital stock. The rights of Pruyn under this loan have been assigned by him to the complainant, Andrews, and the latter has filed this bill to compel the defendants, or some of them, to turn over to him preferred stock of the Guayaquil and Quito Railway Company of the par value of $650,000, which he asserts was pledged by the Ecuador Company to Pruyn as security for the loan, but was never actually transferred to him.

The stock, which is the subject of this litigation, was originally the property of the Ecuadorian Association, a Scotch construction company, formed for the purpose, among other things, of building the Guayaquil and Quito railway. In January, 1902, the association, having met with difficulty in procuring funds for the carrying on of their work of building the railway, executed a trust deed to the defendants, Gardyne, DeFriese and Lockwood as trustees, the primary purpose of which was to provide a method of raising the moneys required for the prosecution of the company's work. The stock in question was a part of the securities conveyed to these trustees, and by the terms of the deed they were authorized

"from time to time and at any time or times, to dispose of or otherwise deal with the mortgaged premises (viz., the securities transferred by the deed) or any part or parts thereof  *  *  *  in any way or ways which may be required by the Association and approved by the trustees for the purpose of raising money. in order to enable the Association to perform its obligations under the construction contract  *  *  *  and for such purpose to approve of any pledges, mortgages, sales or public or private issues of the mortgaged premises or any of them upon and subject to any terms and conditions whatever."

A year after the making of the trust deed, and on the 17th day of February, 1903, the association, still being in financial difficulties, entered into an agreement with the Ecuador Company by the terms of which the latter corporation took upon itself the burden of completing the railway, and assumed all other obligations of the association, and the association conveyed and assigned to the company all of its property, including the securities held by the trustees. These securities, however, were assigned expressly "subject to the provisions of said trust deed." Soon after the execution of this agreement Pruyn began the making of the loans to the company which, together, constitute the $65,750. By the 30th of March all of this money, except about $1,350, appears to have been loaned, and on that day the directors of the Ecuador Company passed a resolution instructing the trustees, Messrs. Gardyne, DeFriese and Lockwood, to deliver to Pruyn as collateral security for the loans preferred stock of the Guayaquil and Quito Railway Company equal to ten times the amount of cash advanced by him. A copy of this resolution was sent to the trustees, and on April 29th they notified the president of the company that they had on that day instructed their bankers, who were the depositories of the stock, to hold $650,000 worth of it to the order of Pruyn. Later, however, the trustees concluded that the assignment of the stock to Pruyn would be a violation of the provision of the trust deed, and for this reason refused to carry out the instruction of the board of directors. The complainant now claims that the resolution of the directors of the Ecuador Company. and the subsequent instruction of the trustees to their bankers, operated as an equitable assignment of the $650,000 of preferred stock of the railway company, and seeks to compel the actual transfer and delivery thereof to him by the defendants, of stock certificates to that amount.

On the hearing of the case before the vice-chancellor it was considered by him that the relief sought by the complainant should be refused—*first,* because the agreement to pledge the stock to Pruyn had no valid consideration to support it, and *second,* because the agreement was nugatory for the reason that it was in violation of the terms of the trust deed. A decree was thereupon entered dismissing the bill of complaint. From this decree the complainant appeals.

We think the decree must be affirmed, and we rest our conclusion upon the second ground specified by the learned vice-chancellor. The power of disposition of the stock by the trustees was limited by the terms of the trust deed to a single purpose, namely, that of raising money in order to enable the Ecuadorian Association to perform its obligations under the construction contract, and it was for that purpose alone that the trustees were authorized to "approve of any pledges, mortgages or sales" thereof. The transfer of the interest of the Ecuadorian Association in this stock to the Ecuador Company was upon the express condition that the trust under which it was held should remain in full force. The importance of this provision for the protection of the association is apparent; for without it the assets which it turned over to the Ecuador Company might be used by the latter for purposes other than the construction of the railway, and the association, in case the Ecuador Company should default on its obligation to perform the contract which it assumed, might be left to bear the burden of that default with a bankrupt treasury. Although the beneficial ownership of the stock had become vested in the Ecuador Company under its agreement with the association, it was subject to the trust which still existed for the benefit of the latter, and the terms thereof could not be departed from by the trustees without the assent of the association. The purpose of the resolution of the board of directors of the Ecuador Company of March 30th, 1903, did not contemplate the raising of money to perform obligations arising under the construction contract of the Ecuadorian Association, but the securing to Pruyn of the repayment of moneys theretofore loaned by him to the Ecuador Company, the greater portion of which, it may be said in passing, would seem, from the evidence, not to have been

used, and not even to have been intended to be used, either directly or indirectly, in the work of constructing the Guayaquil and Quito railway. There is no pretence that Pruyn was induced to make the advances to the Ecuador Company under a promise by it to secure their repayment by a pledge to him of this stock, and the transfer of it by the trustees for such a purpose would, therefore, have been a clear violation of their trust, and one which would have worked serious injury to the Ecuadorian Association whose right to a strict performance of its provisions was preserved by the express terms of their agreement with the Ecuador Company.

The decree under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL—14.

*For reversal*—None.